UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WORLD WIDE STREET PREACHERS'
FELLOWSHIP, et al.,

        Plaintiffs,                               FILE NO. 1:07-CV-57

v.                                             HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS, et al.,

        Defendants.
_____/


## OPINION

      This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by Plaintiff World Wide Street Preachers' Fellowship ("SPF") and David Ickes against Defendant City of Grand Rapids ("City" or "Grand Rapids") and Grand Rapids Police Sergeants Mark Mathias and (unknown) Webster.  The matter presently is before the Court on Plaintiffs' motion for preliminary injunction (Docket #2).  For the reasons that follow, the motion is **granted in part and denied in part**.

### I.

      The instant action arose out of events occurring on September 23, 2006.  On that date, a group had obtained a permit to hold a Pagan Pride Festival at Richmond Hills Park in Grand Rapids.  At approximately 11:15 a.m., Plaintiff Ickes and a number of other members of SPF gathered at the park near the festival.  A member of SPF, Matt Scott, stood on a

small, raised platform and began to preach in a very loud voice, in order to be heard by or drown out participants in the festival. The police were called to the scene and Scott was ordered to stop preaching so loudly. Ickes served as the spokesperson for the group. Ickes was advised that any type of organized group meeting, speech, service or demonstration required that the group obtain a permit. Police also advised that the loud preaching was disturbing the peace. Scott ignored repeated police requests to lower his voice or stop preaching. Defendant officers arrested Scott for creating a disturbance, handcuffed him and placed him in a cruiser. Within a minute of Scott's arrest, another member of the group stood on the platform and began to preach. Police warned the new preacher to, "Do it in a low volume, I'm telling you." The preacher informed the police, "I'm going to do it in a volume so they can hear me." For the next hour and a half, the police contacted supervisors to ascertain how to handle the situation. Eventually, Mathias advised Ickes that the group would have to stop and leave the park or risk being cited. Scott was cited for disturbing the peace and released.

Plaintiffs allege that Grand Rapids City Code, Title III, Chapter 41, section 3.11 (requiring permits for gatherings in City parks) and Title IX, Chapter 153, section 9.137 (barring disturbance of the peace) are unconstitutional on their face and as applied. The ordinances provide in relevant part as follows:

> No group political meetings or functions, religious meetings, public speeches, concerts, or other similar activities shall be held within a park except pursuant to a permit issued by the Director of Parks and Recreation or his/her designee

2

with reasonable restrictions only with regard to the time, place and manner of activity to be conducted.

GRAND RAPIDS CODE, TITLE III, CHAPTER 41, § 3.11 (emphasis added); and

No person shall . . . [d]isturb the public peace and quiet by loud or boisterous conduct.

GRAND RAPIDS CODE, TITLE IX, CHAPTER 153, § 9.137.

Section 3.4 of Chapter 41 of the Grand Rapids City Code authorizes the Director of Parks and Recreation to adopt rules and regulations, which only become effective when approved by the City Commission. *Id.* In accordance with that authorization, the Department has adopted regulations and applications governing special events. (Br. in Opp. to Mot. for Prelim. Inj., Ex. 12, Docket ##21-4 to 21-13.) Those regulations require notice in order to process the "permits and insurance, and to make arrangements for city services (street closings, parking arrangements, security, equipment, facilities, public information dissemination, and the like)." (Docket #21-13 at 4.) According to the City's Summary of Park Rules & Regulations, certain activities, including "loud or boisterous conduct" are completely prohibited. Other activities are prohibited in the absence of a permit: alcohol consumption; overnight park use or camping; raffles; hot air balloon launching on unauthorized sites; model boats, jet skis, wave runners and similar personal watercraft; sound amplification that disturbs the quiet enjoyment of the park by others; ride animals or drive vehicles of designated roadways or in excess of 10 m.p.h.; admission charge for profit making activity; and parking lot use for other than parking vehicles. (Br. in Opp. to Mot. for

3

Prelim. Inj., Ex. 4; Docket #21-4.)  As part of the regulatory process, the City has adopted a special events permit application, which, according to its first page, must be submitted three months in advance of the event for small events involving less than 200 people and six months in advance for major events involving more than 200 people.[1]  (Docket #21-6 at 2.) According to administrative policy, such permits must be sought one month in advance for small events and six months in advance for major events.  (Docket #21-13, Sec. V(C)(1) at 4.)  Chapter 41, Section 3.5 of the Grand Rapids City Code provides for the waiver of the enforcement of the strict letter of any rule or regulation promulgated by the Department:

> The Director of Parks and Recreation is authorized to waive or modify enforcement of the strict letter of any rule or regulation promulgated by the Director where practical difficulties in carrying out the strict letter of such rule or regulation would result in hardship to a particular person or persons, or to the public.  Such waiver or modification, however, must be of a character which will not impair the purposes and intent of this Chapter.  Any such modification or waiver shall be at the discretion of the Director, subject to the supervision and control of the City Manager.

*Id.*

Plaintiffs argue that the ordinances violate their First Amendment rights to the free exercise of religion, to peaceably assemble, and to free speech, and they raise a facial

---

[1]According to the last page of the application, however, an application must be received at least thirty working days before an event, or sooner for some events.  (Docket #21-6 at 4.)

challenge to each ordinance on the grounds of vagueness and overbreadth.[2]  Plaintiffs seek

declaratory and injunctive relief, nominal damages and attorney fees.

## II.

In reviewing a request for a preliminary injunction, a court must consider and weigh

four factors: (1) whether the plaintiff has established a substantial likelihood of success on

the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether the

issuance of the injunction would cause substantial harm to others; and (4) whether the public

interest would be served by granting injunctive relief.  *See Deja Vu of Nashville, Inc. v.*

*Metro. Gov't of Nashville & Davidson County*, 466 F.3d 391, 395 (6th Cir. 2006); *Nightclubs,*

*Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000).  "In cases involving the First

Amendment, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood

of success on the merits.  This is so because, as in this case, the issues of the public interest

and harm to the respective parties largely depend on the constitutionality of the statute."

*Nightclubs, Inc.*, 202 F.3d at 888.  Because a preliminary injunction is an extraordinary

---

[2]The Court notes that it is highly questionably whether SPF has standing to bring a challenge to the ordinance as applied.  According to the hearing testimony of David Ickes, SPF does not organize or participate as an organization in events such as the one in issue. Instead, SPF is an organization whose sole purpose it is to educate members about their First Amendment rights in relation to local restrictions on street preaching.  Ickes, in contrast, presumably may bring an as-applied claim on the grounds that his speech was chilled when he was asked to leave the park on threat of arrest and he expresses an intent to participate in preaching events again.  However, because the parties have properly raised facial challenges to the ordinances, one of which the Court finds persuasive, and because at least one Plaintiff appears to have standing to raise an as-applied challenge, the Court will not affirmatively decide the question of SFP's standing on the as-applied challenge.

remedy, the party seeking an injunction must demonstrate by clear showing that preliminary injunctive relief is necessary to protect their First Amendment rights. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

    A.    <u>Substantial Likelihood of Success</u>

    **1.**    **Freedom of speech**

The bulk of Plaintiffs' arguments rest on their claim that the ordinances violate their First Amendment rights to free speech. The Court will separately address the arguments as they pertain to each ordinance.

    a.    <u>Permit ordinance</u>

    i.    Analysis of time, place and manner restrictions

A statute that by its terms distinguishes favored speech from unfavored speech based on the ideas or views of the speaker is considered content-based and thus unconstitutional. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994). However, "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.*

The Supreme Court has recognized that a content-neutral permit scheme regulating speech in a public forum, unlike a permit scheme that gives the official authority to censor the content of speech, is not "'inconsistent with civil liberties but . . . [is] one of the means of safeguarding the good order upon which [civil liberties] depend.'" *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002) (quoting *Cox v. New Hampshire*, 312 U.S. 569, 574

(1941)).  "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

> [A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but . . . it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. . . . The validity of time, place, or manner regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted.

*Ward v. Rock Against Racism*, 491 U.S. 781, 798-800 (1989) (internal quotation marks, alterations, and ellipses omitted), *cited in Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 262 F.3d 543, 557 (6th Cir. 2001).

Nevertheless, statutes or ordinances that require that "permits be obtained from local officials as a prerequisite to the use of public spaces . . . constitute[] a prior restraint on the freedom of speech, press and religion . . . ."  *Nietmotko v. Maryland*, 340 U.S. 268, 271 (1951).  As such, they are invalid unless they include narrowly drawn, reasonable and definite standards for officials to follow.  *Id.*; *see also Thomas*, 534 U.S. at 323 (time, place and manner regulation "must contain adequate standards to guide the official's decision and render it subject to effective judicial review.").

7

(a)    <u>content neutral</u>

Plaintiffs first argue that the permit requirement is not content neutral because religious meetings are included in the list of group functions requiring a permit.  The Court disagrees.

Contrary to Plaintiffs' characterization, the language of the ordinance merely refers to religious meetings in the context of a list of activities from concerts to speeches that are subject to the ordinance.  The list unquestionably is designed to provide examples of the sorts of gatherings requiring a permit, not to identify particular content.  Religion is in no way singled out by the ordinance.  Indeed, the regulation on its face treats religious events the same way it treats other similar events.  The ordinance also strictly limits official discretion to time, place and manner restrictions.  *See* G RAND R APIDS O RDINANCE, T ITLE III, C HAP. 41, § 3.11 ("A permit for such activities *shall* be issued . . . with reasonable restrictions *only with regard to the time, place and manner of activity to be conducted*.") (emphasis added). Restrictions are not content-based where the same standard is applied regardless of the type of gathering involved.  *See Thomas*, 534 U.S. at 322.

(b)    <u>legitimate governmental interest</u>

The purpose of the ordinances adopted under Chapter 41 of the Grand Rapids Code has been declared by the City as follows:

> The provisions of this Chapter shall be held to be the minimum requirements adopted for the promotion of the public health, safety and general welfare of the people of Grand Rapids.  Among other purposes, these provisions are intended to authorize the Director of Parks and Recreation

8

Master Plan and other areas or facilities as may be designated by the City Commission to be under the jurisdiction of the Department of Parks and Recreation.

GRAND RAPIDS ORDINANCE, TITLE III, CHAP. 41, § 3.11.  The Supreme Court squarely has recognized that public safety, health and welfare are legitimate governmental purposes underlying governmental regulations of speech.  *See Thomas*, 534 U.S. at 323; *Cox*, 312 U.S. at 574.  Indeed, Plaintiffs do not challenge the City's legitimate governmental interests in regulating the time, place and manner of certain organized speech.

(c)    narrowly tailored

Plaintiffs argue that the permit ordinance is not narrowly tailored because the ordinance announces no specific standards for the exercise of official discretion in determining when and where to issue a permit.  *See, e.g., Thomas*, 534 U.S. at 323 (requiring adequate standards to guide official's application of regulation); *Nietmotko*, 340 U.S. at 271.  Defendants respond, however, that because the ordinance limits administrative discretion to time, place and manner restrictions, it bars any content-based applications.  As a result, they contend, the ordinance places sufficient standards to guide official action.  *Id.*  In addition, Defendants argue that, because all regulations under the ordinance have been expressly approved by the City Commission, administrative action is further restricted.

In *Thomas*, 534 U.S. 316, the Supreme Court addressed a Chicago ordinance that required a permit for any organized public assembly or activity involving more than 50 people.  The ordinance provided that such permit may only be denied on the basis of one of

9

eleven specific grounds set forth in the ordinance: (1) the lack of a completed application; (2) the failure to pay the application fee; (3) the application contains a material falsehood; (4) the applicant is legally incompetent to contract; (5) the applicant has on prior occasions damaged the park and failed to pay damages; (6) a prior application has been granted that precludes multiple occupancy; (7) the proposed use or activity would conflict with a previously planned program at the same time or place; (8) the proposed use is prohibited by or inconsistent with park uses; (9) the use would present an unreasonable danger to the health of the applicant or others; (10) the applicant has not complied with requirements governing the sale of goods or services; or (11) the use is prohibited by law or regulation. *Id.* at 318 n.1. The Court concluded that "[t]hese grounds are reasonably specific and objective, and do not leave the decision 'to the whim of the administrator.'" 534 U.S. at 324 (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992)).

In the instant case, the ordinance contains a more general description of the limits on official discretion. The ordinance provides that the official's discretionary authority is limited exclusively to "reasonable restrictions only with regard to the time, place and manner of activity to be conducted." GRAND RAPIDS CITY CODE, TITLE III, CHAPTER 41, § 3.11. As the Court previously has concluded, the language demonstrates that the ordinance is not content-based, but instead is a time, place and manner regulation. Nevertheless, as the Supreme Court has recognized, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression . . . [w]here the licensing official enjoys

unduly broad discretion in determining whether to grant or deny a permit . . . ." *Thomas*, 534 U.S. at 323.

Here, the ordinance does not itself fully describe the limits of official discretion. Instead, the City has adopted an administrative policy for enforcing the ordinance, as well as an application setting forth all information and terms required for issuance of a permit. That policy and application contain requirements strictly directed at ensuring the adequacy of City services and venues, insurance coverage, rental charges for equipment and facilities and adequate permitting for alcohol and food service. No content-based information is demanded beyond a general description of the event. The limitations contained in the administrative policy and application, which have been approved by the City commission, contain sufficient standards to limit and guide the exercise of official discretion. *See Thomas*, 534 U.S. at 323.

Notwithstanding the Court's conclusion that the permit ordinance, when considered with the supporting policy and application, is sufficiently specific to limit official discretion, the ordinance nevertheless is not narrowly tailored in other ways. First, neither the ordinance nor the policies identify any minimum number of participants for which a permit is required. As the Sixth Circuit has held, "[p]ermit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring." *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) (citing *Burk v. Augusta-Richmond Cty*, 365 F.3d 1247, 1259 (11th Cir. 2004) (Barkett,

11

C.J., concurring) (striking down an ordinance as not narrowly tailored because it applied to "small intimate groups"); *Grossman v. City of Portland*, 33 F.3d 1200, 1206-07 (9th Cir. 1994) (striking permitting ordinance where it was applied to a group of six or eight people carrying signs in a public park).   The Sixth Circuit struck as not narrowly tailored and as overbroad an ordinance requiring a permit for any "organized group having a common purpose or goal, proceeding along a public street or other public right-of-way in the City of Dearborn."   *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 608.   The court concluded that such an ordinance was "hopelessly overbroad" because it "would include almost any imaginable procession on Dearborn's streets or sidewalks . . . ."   *Id.*

Here, as in *American-Arab Anti-Discrimination Comm.*, the ordinance applies to groups of any size, declaring that "[n]o group political meetings or functions, religious meetings, public speeches, concerts, or other similar activities shall be held within a public park except pursuant to a permit . . . ."   Nor do the regulations or application limit the scope of the ordinance.   The administrative policy defines a special event as "an activity or series of activities, specific to an identifiable time and place, most often produced in conjunction with community organizations, held on public property, and generally occurring once a year." (Grand Rapids Admin. Pol. 89-01, Sec. II; Docket #21-13.)   The policy and application further describe the size of such events as small events (up to 200 people) and major events (200+ people).   (Permit App. at 1; Docket #21-6.   *See also* GRAND RAPIDS ADMIN. POL. 89-01, Sec. V(C); Docket #21-13.)

The City does not contest that the ordinance is intended to apply to even very small groups. Indeed, as is apparent from the video recording of the event underlying the instant facial challenge, only approximately eight or ten people were involved in the gathering underlying the instant challenge. Under the reasoning of *American-Arab Anti-Discrimination Comm.*, the ordinance, on its face, is not narrowly tailored and is overbroad.

In addition, in *American-Arab Anti-Discrimination Comm.*, the Sixth Circuit squarely held that a 30-day notice period for issuance of a permit is not, on its face, narrowly tailored. *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 607. As the court recognized, the notice period restricts the public's use of traditional public fora that "have immemorially been considered a rightful place for public discourse." *Id.* at 605 (citing *Hague v. CIO*, 307 U.S. 496, 515 (1939) ("Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public . . . .")). "Because notice provisions have the tendency to stifle our most paradigmatic examples of First Amendment activity, courts must take special care when reviewing the government's justification for its infringement." *Id.* As a consequence, a court must consider whether a notice provision is unnecessarily protracted, thereby stifling substantially more speech than necessary. *Id.*

The regulations adopted under Grand Rapids Ordinance, Title III, Chap. 41, section 3.11 provides that planners of even small events must give notice of at least one month. Moreover, the application forms themselves require submission three months in advance. (Ex. 5 at 1; Ex. 9 at 8.) Under *American-Arab Anti-Discrimination Comm.*, even the

13

minimum notice period set forth in the administrative policy and the application are not narrowly tailored.

Defendants argue that the instant ordinance is distinguishable because, unlike in *American-Arab Anti-Discrimination Comm.*, the Director of Parks and Recreation is authorized to waive or modify enforcement of the strict letter of any rule or regulation if it would result in hardship to a particular person or the public. The Court is persuaded that the uncircumscribed authority to waive technical compliance with the rules is insufficient to rescue the notice period from unconstitutionality. In *American-Arab Anti-Discrimination Comm.*, the Sixth Circuit considered substantial testimony from numerous officials that, while the permit process technically required thirty days, the City of Dearborn could and did approve permits in much less than 30 days. *Id.* at 606. The court concluded that the pervasiveness of the past practice constituted indisputable proof that the 30-day period was overly expansive. *Id.* The court further found that the practice of routinely approving permits on shorter notice remained insufficient to save the ordinance from its lack of narrow tailoring, both because the public was without notice of the practice and because "no provision in the Ordinance, past practice, or narrowing construction [] specifies standards by which [the city] makes its waiver decisions." *Id.* at 607. The court held,

> While we embrace the broad latitude and flexibility extended to waiver schemes generally, *Parks v. Finan*, 385 F.3d 694, 700 (6th Cir. 2004), the City of Dearborn's "unwritten policy of waiving the permit requirement" is "opaque," and lacking in sufficient notice and standards to guide city officials, *Church of Am. Knights of KKK v. City of Gary*, 334 F.3d 676, 682 (7th Cir. 2003). It thus fails to save the Ordinance from its lack of narrow tailoring.

*American-Arab Anti-Discrimination Comm.*, 418 F.3d at 607.

In the instant case, Grand Rapids Code, Title III, Chapter 41, § 3.11, grants the authority to the Director to waive the letter of any rule or regulation "where practical difficulties in carrying out the strict letter of such rule or regulation would result in hardship to a particular person or persons, or to the public." *Id.* As a result, the situation is distinguishable in part from that before the Sixth Circuit in *American-Arab Anti-Discrimination Comm.*, since the public is on clear notice that the technical requirements of any regulation may be waived.

However, the Court finds that the waiver authority contained in Grand Rapids City Code, Title III, Chapter 41, section 3.5 provides insufficient guidance to city officials regarding when the 30-day notice period should be waived. First, the Court notes that the City presented no evidence of any practice of waiving the permit notice requirement, notwithstanding the representations of counsel that a simple permit such as that implicated by the facts of this case could be issued within one day. As a result, no evidence exists that the Department actually interprets the ordinance as requiring the issuance of permits on short notice whenever sufficient time exists to process the application. Second, the provision does not require the waiver of any particular regulation or rule whenever strict application of the rule would result in hardship to a person or the public; instead, it merely permits such waiver, thereby leaving the discretion solely with the official. Third, because § 3.5 is a general provision, it does not clearly identify the kinds of circumstances in which waiver of the

notice period should routinely be granted, such as when the Department had sufficient time to process the application, even if that time was much less than 30 days.

Taken together, the Court concludes that, under *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 608, the ordinance is not narrowly tailored.

(d)     alternative channels of communication

Plaintiffs contend that the ordinance does not permit sufficient alternative channels of communication because it bars a single preacher from engaging in all spontaneous oral speech.  The Court concludes that, although the ordinance is not narrowly tailored because it excludes far too much constitutionally protected speech, the ordinance nevertheless permits many alternative channels of spontaneous communication.  Under the ordinance, Plaintiffs are permitted to pass out literature or approach individuals to engage in dialog.  The permit ordinance only requires a permit for giving a speech, holding a concert, conducting a religious service, or other like event held open to the public; it does not require a permit for handbilling, picketing or talking to those who are gathered.  As the Supreme Court repeatedly has recognized, the ability to engage in other forms of expression at the forum is sufficient to permit the exclusion of a particular form of expression, as long as it meets the other prongs of the *O'Brien* test.  *See Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 295 (1984); *Frisby v. Schultz*, 487 U.S. 474 (1988); *Rock Against Racism*, 491 U.S. 781. Notwithstanding its other infirmities, the ordinance does not implicate the fourth prong of the *O'Brien* test.

16

ii.      adequacy of judicial review

Plaintiffs next argue that the permit ordinance is unconstitutional because it does not provide for the sort of immediate judicial review of any denial, as described in *Freedman v. Maryland*, 380 U.S. 51 (1965), and repeated in dicta in *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 155 n.4 (1969).  The Supreme Court, however, has squarely held that the *Freedman* requirements for judicial review apply only to "subject-matter censorship," not "content-neutral time, place and manner regulation of the use of a public forum." *Thomas*, 534 U.S. at 322.  Here, as in *Thomas*, the regulations in issue are not content-based, but are clearly and exclusively reasonable "[r]egulations of the use of a public forum that ensure the safety and convenience of the people . . . ." *Thomas*, 534 U.S. at 323.  As a consequence, the absence of a provision for immediate judicial review of every permit denial does not render the ordinance constitutionally infirm.  *Id.*

iii.      overbreadth

In most circumstances courts will not consider a facial challenge to a statute or ordinance "on the ground that it may conceivably be applied unconstitutionally to others." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).  However, "the Court has altered its traditional rules of standing to permit – in the First Amendment area – 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn by the requisite narrow specificity.'" *Broadrick*, 413 U.S. at 612 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

Nevertheless, "overbreadth adjudication is an exception to [the] traditional rules of practice," and, "particularly where conduct and not mere speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615.

Here, as the Court previously has discussed, the statute is not narrowly tailored in its application to small group speech and its notice period. For the same reasons the Court finds the statute is not narrowly tailored, the statute is substantially overbroad. *See American-Arab Anti-Discrimination Comm.*, 418 F.3d at 607 n.5.

iv.    vagueness

A statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the definition of its terms to law enforcement officers. *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 608-09 (citing *Leonardson v. City of East Lansing*, 896 F.2d 190, 196 (6th Cir. 1990)).

> Vague laws offend several important values. First, . . . [v]ague laws may trap the innocent. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. . . . Third, . . . where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

In *American-Arab Anti-Discrimination Comm.*, the Sixth Circuit found that, while the permit ordinance in issue was overly broad and not narrowly tailored, it was not vague, as

18

the language was sufficient to provide fair notice of the proscribed activities.  418 F.3d at 608-09.  Here, as in *American-Arab Anti-Discrimination Comm.*, the ordinance in question has been interpreted in the City regulations to apply only to "events," by which the regulations mean organized activities open to the public.  Plaintiffs argue that they are not organized, but instead operate as individuals.  They also argue that the regulations do not make clear that they apply to Plaintiffs' activities because they were not conducting an activity open to the public.

The argument that Plaintiffs are not organized is belied by many facts: (1) the assertion of an interest in the constitutionality of the ordinance by the SPF as an organization; (2) the use of a single person as a spokesperson for the group; (3) the coordinated preaching, by which one individual replaces another regularly; (4) the coming together of at least eight people at the same time and place with prepared signs and banners in their possession.

In addition, Plaintiffs' argument that their preaching is not open to the public is, on its face, disingenuous.  According to the video and audio recordings submitted by Plaintiffs, the obvious intent of all participants was to direct their voices, as loudly as possible, so that they could be heard by others in the park, specifically those involved in the Pagan Pride festival.  Plaintiffs unquestionably invited all those within hearing distance to listen to their preaching, and their signs indicated they were addressing the public, not conducting a private religious affair.

19

As a consequence, Plaintiffs demonstrate little likelihood of success on their claim that the permit ordinance is vague.

          b.     <u>Breach-of-the-peace ordinance</u>

             i.     vagueness

Plaintiffs argue that the breach-of-the-peace ordinance is vague. The ordinance provides that "[n]o person shall . . . [d]isturb the public peace and quiet by loud or boisterous conduct." GRAND RAPIDS CODE, TITLE IX, CHAPTER 153, § 9.137. Plaintiffs contend that the definition of "loud and boisterous" is insufficiently specific to provide notice, particularly where, as here, the speaker was in a public park in the middle of the day and was using only his voice.

As the Court previously discussed, a statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the definition of its terms to law enforcement officers. *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 608-09. In *American-Arab Anti-Discrimination Comm.*, the Sixth Circuit held that the words "breach the peace," as defined in the ordinance, were not unconstitutionally vague. *Id.* at 610. The ordinance defined a breaching of the peace as "[a]ny person who shall make or assist in making any noise, disturbance, trouble or improper diversion, or any rout or riot, by which the peace and good order of the city are disturbed." *Id.* In context, the Court found sufficient clarity to avoid vagueness. *See also People v. Weinberg*, 149 N.W.2d 248, 252 (Mich. Ct. App.

1967) (discussing definition of breach of peace and defining "disturbance" under Michigan law); *In re Gosnell*, 594 N.W.2d 90, 96 (Mich. Ct. App. 1999) (defining "breach of the peace").    The language of the Grand Rapids ordinance is substantially similar to that approved in *American-Arab Anti-Discrimination Comm.*, prohibiting "disturb[ing] the public peace and quiet by loud or boisterous conduct."    The reasoning of *American-Arab Anti-Discrimination Comm.* strongly suggests the ordinance is not vague.

Moreover, the Supreme Court also has upheld similar language as not unconstitutionally vague.  In *Kovacs v. Cooper*, 336 U.S. 77, 79 (1949), in the context of an ordinance regulating sound amplifying devices, the Court held that the words "loud and raucous" were sufficiently clear to be enforceable.

> The contention that the section is so vague, obscure and indefinite to be unenforceable merits only a passing reference.  This objection centers around the use of the words "loud and raucous."  While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden.

*Id.*

Similarly, in *Grayned*, 408 U.S. at 109-110, the Court upheld an antinoise ordinance against a vagueness challenge.  The ordinance in *Grayned* provided that

> [N]o person, while on public or private grounds adjacent to any building in which a school of any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof.

*Grayned*, 408 U.S. at 107-08 (quoting ROCKFORD CODE OF ORDINANCES, ch. 28, § 19.2(a)). The Court held that, while "[t]he words of the Rockford ordinance are marked by 'flexibility

and reasonable breadth, rather than meticulous specificity, . . . we think it is clear . . . the ordinance forbids deliberately noisy or diversionary activity that disrupts or is about to disrupt normal school activities."  The Court distinguished the ordinance from those vague breach-of-the-peace ordinances in *Cox v. Louisiana*, 379 U.S. 536 (1965), and *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), which, by prohibiting speech that was "annoying" to others, "permitted persons to be punished for merely expressing unpopular views." *Grayned*, 408 U.S. at 113.

Further, relying on *Kovacs*, the Michigan Court of Appeals has upheld a virtually identical ordinance that barred "disturbing the public peace and quiet by loud or boisterous conduct."  *City of Lansing v. Hartsuff*, 539 N.W.2d 781, 785 (1995).  The *Hartsuff* court recognized that, applying a reasonable person standard, the term "loud and boisterous" had sufficient meaning within the context of  "disturb[ing] the public peace and quiet" so as to not punish for mere annoyance caused by content or annoyance of a hyper-sensitive person. *Id.*  The court recognized, however, that what is sufficiently loud or boisterous to disturb the public peace and quiet "necessarily depends on all the surrounding facts and circumstances." *Id.  See also Grayned*, 408 U.S. at 116 (noting that "[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time."); *United States v. Williams*, No. 89-3720, 1990 WL 811(6th Cir. Jan. 8, 1990) (upholding against a vagueness challenge a regulation prohibiting "[d]isorderly conduct which creates loud, boisterous, and unusual noise . . . " in a veteran's hospital).

22

The Court is persuaded that the Michigan Court of Appeals in *Hartsuff* correctly applied Supreme Court and Sixth Circuit precedent in upholding the language in issue in the instant case.  The terms "loud and boisterous" and "disturb[ing] the public peace and quiet" have well understood common meanings, *see Kovacs*, 336 U.S. at 79, that Michigan courts have construed, *see Hartsuff*, 539 N.W.2d at 785, and that a reasonable person would understand, *see id*.  While the park is a public forum in which louder speech may be appropriate, *see Grayned*, 408 U.S. at 116, a reasonable individual would understand that shouting at the top of one's lungs over an extended period of time in close proximity to a festival would disturb the public peace and quiet of an ongoing event.  As the Supreme Court has recognized in the permit context, "[t]he right of free speech . . . does not embrace a right to snuff out the free speech of others."  *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 387 (1969), *quoted in Schwitzgebel v. City of Strongville*, 898 F. Supp. 1208, 1217 (N.D. Ohio 1995).  *See also Cox*, 379 U.S. at 554 ("[t]he rights of free speech and assembly . . . do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time" because "the constitutional guarantee of liberty itself . . . would be lost in the excesses of anarchy").

For all these reasons, the Court finds that Grand Rapids City Code, Title IX, Chapter 152, § 9.137 is not unconstitutionally vague on its face.  The Court further concludes that Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their as-applied challenge.

ii.    overbreadth

Plaintiffs argue that the statute also is overbroad because it encompasses all speech that upsets or annoys others.  They argue that the Supreme Court, in *Terminello v. City of Chicago*, 337 U.S. 1, 4 (1949), which rejected a breach-of-the-peace ordinance as overbroad on the basis of its annoyance to others, bars enforcement of the instant ordinance.  The Court disagrees.

In *Terminello*, the Supreme Court considered a breach-of-the-peace ordinance that "permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest." *Id.*  The Court held that enforcement based on any of those grounds was unconstitutional. *Id.*  The Court, however, in no way suggested that all breach-of-the-peace ordinances were impermissible.  Indeed, the Court did not strike those parts of the ordinance related to noise or the creation of a disturbance. *Id.* at 3. Instead, the Court focused on those parts of the ordinance proscribing speech solely because of the reactions of others to the content of the speech, holding that such prohibitions were appropriate only when the speech in issue amounted to "fighting words." *See id.* (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-73 (1942)).  The principle of *Terminello* is beyond dispute and has been recognized by the Court in numerous other cases. *See Cox*, 379 U.S. at 552; *Coates*, 402 U.S. at 615-16.

*Terminello*, however, is inapposite to the case before this Court.  The Grand Rapids breach-of-the-peace ordinance does not impose liability based on the reactions or annoyance

24

of others to the content of any speech.  Instead, it rests on the objective reasonableness of the noise level of the speech in relation to the public use of the forum.  Both the Supreme Court and the Sixth Circuit have recognized that such restrictions are proper.  *See Kovacs*, 336 U.S. at 79; *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 610.

The Court therefore concludes that Grand Rapids City Code, Title IX, Chap. 152, § 9.137 is not facially overbroad.  Further, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their as-applied challenge.

### 2.    Freedom of religion

In their brief, Plaintiffs claim that their principal argument is that both ordinances violate their First Amendment rights to the free exercise of religion.  Notwithstanding this assertion, the brief is almost entirely directed to the arguments concerning restrictions on speech.

"[T]he right to the free exercise of religion unquestionably encompasses the right to preach, proselyte, and perform other similar religious functions . . . ."  *McDaniel v. Paty*, 435 U.S. 618, 625 (1978).  Plaintiffs contend that their right to the free exercise of their religion is impinged by the permit ordinance because it inhibits the spontaneous exercise of these functions.  In addition, they argue that the breach-of-the-peace ordinance undermines their religious exercise because they have been threatened by the ordinance while engaging in those religious activities.

25

In support of their free-exercise claim, Plaintiffs cite *Sherbert v. Verner*, 374 U.S. 398 (1963), for the proposition that a government may not burden conduct motivated by a sincerely held religious belief unless it acts by the least restrictive means to further a compelling state interest.  The Supreme Court, however, squarely and unequivocally has held that *Sherbert* does not apply outside the limited confines of its own facts.  *See Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 883-84 (1990).  In *Smith*, the Court expressly held that the strict scrutiny test of *Sherbert* does not apply to laws of general applicability.  *Id.* at 888-89.  "The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.'" *Id.* at 885 (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988)).  "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of Lakumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993).

In the instant case, Plaintiffs appear to argue that the permit regulation and the breach-of-the-peace ordinance are religiously motivated.  "There are, of course, many ways of demonstrating that the object or purpose of a law is the suppression of religion or religious conduct.  To determine the object of a law, we must begin with its text, for the minimum

requirement of neutrality is that a law not discriminate on its face." *City of Hialeah*, 508 U.S. at 533.

The clear language of the ordinances in no way singles out religious activity. Instead, the ordinances are generally applicable prohibitions. The permit ordinance mentions "religious meetings" in a list of substantially "similar activities." Rather than demonstrating that religion is being singled out, however, that inclusion makes it clear that religious meetings are to be treated in the same manner as "other similar activities" that would require a permit. Moreover, Plaintiffs make no attempt to demonstrate that, despite the neutral language of the ordinances, the intent is to discriminate.

Plaintiffs suggest, however, that, because the breach-of-the-peace ordinance depends on an assessment of annoyance, it may not be construed as a neutral ordinance of general applicability. As previously discussed, however, the ordinance is enforced based on whether the conduct is "loud or boisterous" and disturbs the public peace and quiet, not on the subjective "annoyance" of any particular listener to the content of the speech, regardless of whether the conduct is religious. Nothing about the language of the ordinance suggests that it was religiously motivated. Further, Plaintiffs have failed to make a significant showing at this stage of the litigation that the ordinance has been or would be enforced in a fashion that would violate the free exercise clause.

Finally, Plaintiffs suggest that the holding of *Smith* does not apply to the ordinances in question because the rights implicated by the ordinances are hybrid. In support of their

argument, they appear to rely on a passage from *Smith* in which the Court distinguished

certain prior decisions, stating that:

> The only decisions in which we have held that the First Amendment bars
> application of a neutral, generally applicably law to religiously motivated
> action have involved not the Free Exercise Clause alone, but the Free Exercise
> Clause in conjunction with other constitutional protections, such as freedom
> of speech and of the press . . . .

494 U.S. at 881.

Regardless of the quoted language used by the *Smith* Court to distinguish certain

cases, the holding of the case squarely limits *Sherbert*, 374 U.S. 398, to its facts.  The Court

noted that, regardless of what test was applied, "[w]e have never invalidated any

governmental action on the basis of the *Sherbert* test except the denial of unemployment

compensation."  *Id.* at 883.  The Court concluded that, "[e]ven if we were inclined to breathe

into *Sherbert* some life beyond the unemployment compensation field, we would not apply

it to require exemptions from a generally applicable criminal law."  *Id.* at 884.  As the Court

observed

> To make an individual's obligation to obey such a law contingent upon the
> law's coincidence with his religious beliefs, except where the State's interest
> is "compelling" – permitting him, by virtue of his beliefs,"to become a law
> unto himself," *Reynolds v. United States*, 98 U.S. [145, 167 (1878)] –
> contradicts both constitutional tradition and common sense.

*Id.* at 885.  As a result of its analysis, the Court held that, in order to preserve the meaning

of the "compelling government interest" test in all of its applications, the Court must adopt

the rule set forth in *Smith*, holding that the "compelling state interest" test does not apply to challenges involving a generally applicable law. *Id.* at 888-89.

Plaintiffs' argument, therefore, does not withstand scrutiny. The Supreme Court has not established a test for generally applicable laws involving "hybrid" rights. Instead, as previously discussed, the rule set forth in *Smith* is applicable to the instant ordinance.

For all these reasons, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their free exercise claim.

### 3.    Freedom of assembly

Plaintiffs briefly and sweepingly argue that the permit ordinance impermissibly restricts their right to free assembly under the First Amendment. "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (1958). Plaintiffs contend that the permit requirement impermissibly requires a permit for spontaneous assemblies.

The argument requires little discussion at the preliminary injunction stage. The ordinance, by its terms, does not apply to all assemblies of people in the park. Instead, it imposes the requirement of a permit only for limited types of conduct by such assembled people, and then only if they are engaged in an event open to the public. Plaintiff fails to cite any law supporting their sweeping claim that their right of assembly is unconstitutionally impaired. As the Court has determined, the statute is not vague on its face. Moreover,

Plaintiffs have failed entirely to demonstrate that the ordinance has been applied to limit their right to assemble rather than to speak in a loud or boisterous manner that disturbed the public peace and quiet.  They therefore fail to demonstrate a substantial likelihood of success on the merits of the claim.

Plaintiffs' argument concerning the breach-of-the-peace ordinance is even more abbreviated.  They argue only that the ordinance may be applied to improperly limit these assemblies and therefore must be found unconstitutional.  As the Court previously has discussed, however, the breach-of-the-peace ordinance, on its face, is not vague or overbroad and may only be applied to certain reasonably ascertainable conduct within the scope of the City's authority to regulate.  Plaintiffs fail to demonstrate a substantial likelihood of success on the merits.

### 4.    Summary of likelihood of success

Having addressed the likelihood of success on the merits on each of Plaintiffs' claims as to both ordinances, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on their facial free speech challenge to the permit ordinance on the grounds that it is not narrowly tailored and is overbroad. The Court concludes, however, that Plaintiffs fail to demonstrate a substantial likelihood of success on their various challenges to the breach-of-the-peace ordinance.

The Court now turns to the remaining components of the test for preliminary injunctive relief.  As the Court previously discussed, the determination as to Plaintiffs

likelihood of success on the merits is the most significant, because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Nightclubs, Inc.*, 202 F.3d at 888.

B.     Irreparable Harm

Defendants argue that Plaintiffs have failed to demonstrate a threat of irreparable harm because they have failed to show that the threat is "real and immediate."  According to Defendants, although one of their members is being prosecuted under § 9.137, the others who participated in the September 23, 2006 incident have not been charged and there is no proof that they would be.  Defendants therefore argue that Plaintiffs should not be entitled to a preliminary injunction.

The Court concludes that Plaintiffs have adequately demonstrated that they are faced with a sufficiently real and immediate risk of irreparable harm from reasonably anticipated future violations of the permit ordinance.  The Court heard testimony at the evidentiary hearing that Plaintiff Ickes and members of Plaintiff SPF intend to try to preach their religious views in the parks in the future.  Because the ordinance appears to require a permit for religious preaching by even one member or by small groups of members, and because the ordinance further requires at least 30 days notice, Plaintiffs are at risk of violating the ordinance in the absence of a preliminary injunction.

With respect to the breach-of-the-peace ordinance, while Plaintiffs may conduct future activities that place them at risk of arrest for extended shouting in a loud and boisterous

31

fashion that disturbs the public peace and quiet, they have not demonstrated a likelihood of success in showing either that the ordinance is facially unconstitutional or is unconstitutional as applied to activities like those on September 23, 2006. As a consequence, they have not demonstrated that they are at immediate risk of an unconstitutional application of the ordinance in any future efforts to preach.

As a consequence, the factor cuts in favor of granting a preliminary injunction with respect to the permit ordinance but against granting a preliminary injunction as to the breach-of-the-peace ordinance.

C.     Harm to Others and the Public

Defendants contend that Plaintiffs' unlimited exercise of free speech will prevent the City from regulating speech in public areas to permit all persons to exercise those rights. Defendants cite *Red Lion*, 395 U.S. at 387, for the proposition that the right of free speech of an individual "does not embrace a right to snuff out the free speech of others." They also urge that time, place and manner restrictions properly may permit one group to exercise speech while prohibiting another group from doing the same at the same time in the same place. *Switzgebel*, 898 F. Supp. at 1219.

Defendants' argument, of course, depends on the constitutionality of the provision as presently drafted. While there exists little doubt that the City may regulate speech in a content-neutral manner for the public safety, convenience and welfare, the Court has concluded that the permit ordinance, as currently drafted, is unconstitutional on its face. As

a result, Defendants cannot show that a preliminary injunction would cause harm either to the public as a whole or to the City's own legitimate interests as those interests are themselves dependent on the constitutionality of the provisions in question. *See Nightclubs, Inc.*, 202 F.3d at 888.

**III.**

For the foregoing reasons, the Court will grant Plaintiffs' motion for preliminary injunction as to the permit ordinance. The Court will deny a preliminary injunction against enforcement of the breach-of-the-peace ordinance. An order consistent with this opinion shall be entered.


Date:    May 16, 2007          /s/ Robert Holmes Bell
                               ROBERT HOLMES BELL
                               CHIEF UNITED STATES DISTRICT JUDGE